# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   CORDELL JOHNSON,<br><br>        Plaintiff,<br><br>v.<br><br>(2)   TERRANCE LOCKETT,<br><br>        Defendant. | Case No.: CIV-17-976-D |

## COMPLAINT

Plaintiff CORDELL JOHNSON, for his cause of action against the above referenced Defendants, would state as follows:[1]

### I.   PARTIES, JURISDICTION, VENUE

1. CORDELL JOHNSON ("JOHNSON") is a resident of Oklahoma and a former inmate of the Oklahoma Department of Corrections. He is not presently incarcerated.

2. Upon information and belief, TERRANCE LOCKETT ("LOCKETT") is a resident and citizen of the state of Missouri. LOCKETT was previously employed by Corrections Corporation of America ("CCA"), a

---

[1] The present case is filed in an abundance of caution to avoid claim failure based on the two-year statute of limitations. Plaintiff has a companion case regarding the incident, United States District Court for the Western District of Oklahoma, Case No. CIV-16-1061-R. In that case, Plaintiff has filed an opposed motion to join Lockett as a party Defendant, but has yet to obtain a ruling. Plaintiff anticipates moving to consolidate the two matters after filing.

publically traded entity listed on the New York Stock Exchange. CCA operates the Cimarron Correctional Facility ("CCF") in Cushing, Oklahoma.

3. The facts giving rise to this claim occurred in Payne County, Oklahoma, making jurisdiction and venue proper.

4. JOHNSON has timely exhausted or satisfied all prerequisites to filing suit.

## II. STATEMENT OF FACTS

5. On September 12, 2015, a fight erupted between two prison groups that resulted in the death of four inmates, and the severe injury of several other inmates including JOHNSON. The fight occurred on the Charlie North housing unit at CCF. Upon information and belief, it stands as the deadliest incident in the history of the Oklahoma Department of Corrections.



6. The incident occurred within the last hour before the evening lockdown when inmates began grouping on the top and bottom runs of the housing unit.

7.      The grouping behavior began after the afternoon count concluded and continued until the fight began approximately one hour later. Grouping is a well-known indicator that an incident is imminent. In addition to grouping, other precursors also suggested a fight was imminent.

8.      LOCKETT was the lone guard on the unit. He was informed by at least one inmate on the unit that a fight was imminent. He also recognized the grouping precursors and, consistent with notice of an imminent fight, several inmates requested an early lockdown despite their history of refusing to lockdown early. Notice of the fight, and the behaviors consistent with that notice, occurred in advance of the incident in sufficient time to intervene.

9.      Upon information and belief, LOCKETT did eventually call for a response shortly before the incident began, but at least one CCA supervisor refused to take any responsive action, telling LOCKETT to call him back when it happens.

10.     Knowing the fight was imminent, and knowing that he called for a response that wasn't coming, LOCKETT did not lockdown the unit, utilize officer presence or command presence, attempt to intervene, or even use his OC spray. Instead, he remained on the upper run and became nothing more than a spectator to the deadliest incident in Oklahoma prison history.

11.     As LOCKETT stood on the top run, he observed one group of inmates move down the stairs where they were met by the second group. The fight

commenced with both groups using weapons made from light fixtures inside cells at CCF and from the CCF kitchen.

12. As the fight unfolded, LOCKETT stayed on the upper run even as an unarmed nurse ran in from an adjacent unit to render aid to a dying inmate.

13. LOCKETT had actual knowledge that a fight was imminent, he possessed actual knowledge of incident precursors, and he had time and opportunity to intervene, both before and during the fight, but instead of taking action, LOCKETT allowed the fight to happen with indifference to the consequences.

14. As a direct and proximate result of LOCKETT's indifference, JOHNSON sustained multiple life-threatening stab wounds. He was eventually transported to the hospital where physicians noted severe blood loss and hypovolemic shock prior to initiating emergency surgery to save his life.

### III. STATEMENT OF CLAIMS

#### DELIBERATE INDIFFERENCE
#### FAILURE TO PROTECT
#### 42 U.S.C. § 1983

15. Plaintiff adopts the preceding Paragraphs as if fully set forth herein.

16. JOHNSON was housed on Charlie North at CCF under circumstances that presented an imminent threat of serious harm. LOCKETT had actual knowledge of the conditions, and with indifference to the consequences, failed to

take any steps designed to adequately address the risk to JOHNSON in violation of 42 U.S.C. § 1983 for which LOCKETT is liable.

**WHEREFORE**, all premises considered, Plaintiff respectfully requests the Court enter judgment against LOCKETT in amount that exceeds $75,000.00.

          Respectfully submitted,

          BRYAN & TERRILL

          s/*J. Spencer Bryan*
          J. Spencer Bryan, OBA No. 19419
          Steven J. Terrill, OBA No. 20869
          BRYAN & TERRILL LAW, PLLC
          Nine East Fourth Street, Suite 307
          Tulsa, Oklahoma 74103
          Tele:  (918) 935-2777
          Fax:   (918) 935-2778
          jsbryan@bryanterrill.com
          sjterrill@bryanterrill.com
          *Attorneys for Cordell Johnson*

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**